### HAND *v.* BOATNER.

[94 South. 162. No. 22701.]

1. MASTER AND SERVANT. *Proof of allegations of negligence essential.*
   In a suit for damages against the owner of a sawmill by an employee, where the alleged negligence is a defective construction of the mill, and a failure to furnish the employee with proper appliances for doing the work, the proof must sustain the allegations in the declaration either as to a negligent and improper construction of the mill or a negligent failure to furnish proper appliances with which to do the work.

2. MASTER AND SERVANT. *Proof held insufficient to sustain allegation of improper construction of mill.*
   Proof which merely shows a construction of the mill, but is silent as to whether it is properly or improperly constructed, is not sufficient to sustain the allegation of an improper construction.

3. MASTER AND SERVANT. *Failure to furnish appliance held not negligence.*
   Proof which shows that an experienced employee may use an appliance for doing certain work, but that it would be more dan-

gerous to others for an inexperienced employee, does not prove negligence on the part of the master in failing to furnish the inexperienced employee with this appliance.

APPEAL from circuit court of Lamar county.

HON. G. WOOD MAGEE, Special Judge.

Action by Clayton Boatner, by next friend, W. L. Boatner, against James Hand. From a judgment for plaintiff, defendant appeals. Reversed, and judgment for defendant.

*Tally & Mayson,* for appellant.

The real foundation of this action is the averment that the appellee was injured by working on a saw carriage while it was running and while it was propelled by the dangerous agency of steam. Under no other theory could the case have gone to the jury. This court has lately held, however, that a saw carriage is not a railroad within the contemplation of section 4056, Code of 1906, section 6684, Hemingway's Code, and that the fact that one was injured by the operation of a saw carriage did not make a *prima-facie* case against the employer. *Simms* v. *National Box Company,* 91 So. 194.

The defendant's peremptory instruction should have been given also for the reason that there is no proof whatever that the mill was improperly constructed or that the appellee should have been provided with a hook or some other sort of tool to aid him in his work. With reference to the first averment of negligence, that is, respecting the charge that the mill was improperly constructed, neither the appellee nor any other person undertakes to point out in what respect the construction was improperly made or how it could have been bettered if it be conceded that it was not properly erected in the first instance. The testimony of the appellant and the witness Hartfield is absolutely undisputed and stands out in bold relief in the

record as the only evidence with reference to construction.

Should hooks have been furnished? The appellee has no testimony whatever in the record that hooks should have been furnished him as an aid in the performance of his duties. He undertook to show that there was a usage to the effect that hooks were furnished hands who worked in the capacity he labored in. The only effort to establish that proposition is found on page 10, stenographer's record, which is as follows:

"Q. I want you to state whether or not that was a little mill similar to the one where you were working?

"MR. MAYSON: We object.

"THE COURT: Objection sustained. What is the purpose?

"Q. The purpose is to show that under similar conditions they were using hooks to pull them out.

"THE COURT: Objection sustained.

"MR. HATHORN: We except.

"Q. All right, they didn't furnish you any hook or anything to pull it out with? A. No, sir, they didn't.

. "Q. We would like for the record to show that at a similar mill we offered to prove and to show that at similar mills they furnished a hook with which to trip slabs, for this same work, and we were not permitted to do it and we except."

The fact that a hook might have been used at another mill is no criterion as to whether it should have been used at the defendant's mill. There was then absolutely no evidence whatever on the part of the plaintiff, the appellee, that hooks should have been used. He utterly failed to establish a custom or usage that would be a usage of course in the instant case. There is no suggestion that the appellant knew of a usage of that effect or that one had been established by the mills in general or in that community.

"A usage to be binding must be either shown to be known to the party who is sought to be affected thereby or so general and so generally known as to justify the pre-

sumption that the party contracted with reference to it."
124 American State Rep., page 60; 150 Ala. 122; 43 So.
479, Greenleaf on Evidence, Sec. 251; 17 Corpus Juris,
sec. 18, page 458.

Not only did the appellee fail to prove that he should
have been equipped with a hook or some other tool but the
appellant showed conclusively that it was absolutely dan-
gerous both to the appellee and to others working along
with him to have provided him with an instrumentality
of that kind.

Rawls Hathorn and W. J. Hathorn, for appellee.

Appellant contends that we failed to show an improper
construction, and therefore he should have had a peremp-
tory instruction. He bases his assertion on the fact that
appellee nor any of his witnesses stated in so many words
that it was an improper construction, and that appellant
and his witnesses testified that it was properly construct-
ed. It is true that appellee did not say in his testimony
that the mill was improperly constructed, and if he had
been asked that question by us he would not have been
permitted to answer it, for at most it would have been an
opinion. The question of whether or not the extending
of the carriage blocks some four inches out and over the
roller bed and the roller bed boxes, and so close to it that
one's hand would be mashed if caught, was a proper or
improper construction, was one of fact to be determined by
the jury. We did what it was proper for us to do, and
the only thing we could do under the law, and that was to
show how the mill was constructed, how the work had to
be performed, that it was dangerous, and that appellant
was injured, and then the jury had to say, as a question
of fact, whether or not it was a proper construction, and
whether or not, if an improper construction, this was the
proximate cause of appellee's injury.

It appears, therefore, that the testimony as to whether
hooks were in use at this mill, and as to whether they were

dangerous and why, was in hopeless conflict, and again we submit that it was a question for the jury to say whether or not appellee had sufficient experience to use the hook without danger. Hartfield does not attempt to say how much experience the trip must have or how long he must work at this job before he will have sufficient experience to be trusted with a hook and the jury might properly conclude from the evidence and their common knowledge of these matters that three weeks actual experience and previous observation, all which the testimony shows, would have been sufficient experience to entitle appellee to be furnished with one of these hooks. These were all disputed questions of fact and were properly submitted to the jury by the trial court.

Appellant cites Labatt's Master and Servant, to the effect that the master does not owe a servant the duty to change the construction and arrangement of his plant, etc. But under the implied terms of contract the work must be done with the construction and permanent arrangement which then appeared, etc.

Appellant, of course, cannot be ignorant of the fact that the assumption of risk of a dangerous or not reasonably safe place to work has been entirely abolished in this state and in this character of cases, and, therefore, this rule announced by Labatt in no way does away with the rule which requires the master to furnish the servant with a reasonably safe place in which to work. This is imperative on the master, whether it apply to the construction of the plant or the furnishing of an appliance by which the place may be made safe. And with the abolition of the assumption of risk on the part of the servant, the fact that he found the place where he was required to work not reasonably safe, either because of construction or otherwise, and continued to work there, in no way relieves the master of his duty to make and keep the place reasonably safe, nor does it relieve him from liability if the servant is injured by reason thereof.

Appellant's citation of authorities and his discussion of the question of usage, etc., is not applicable to the facts in this case. In the first place appellee was not permitted to show what the custom was in other mills, and in the next place, appellant's own witnesses testified that hooks were practicable and were used in this very mill and for this very purpose, but that none were furnished appellee and that no hook was there for him to use, and one of these witnesses was the general manager of the mill.

Another reason that would prevent the trial court from giving a peremptory instruction in this case is the fact that under the statute, Hemingway's Code, section 503: "All questions of negligence and contributory negligence shall be for the jury to determine." There is clearly no merit in appellant's second assignment of error. Of course if appellant was entitled to a peremptory instruction then all appellee's instructions are error, and that would be an end to the entire matter, but we think we have clearly demonstrated that he was not entitled to a peremptory instruction and if he is not entitled to a peremptory instruction, appellee's instruction No. 1 correctly announces the law. Appellant cites no authorities nor assigns any sound reason why this instruction is not the law, or is not proper in this case.

As so aptly stated by this court in the case of *Y. & M. V. R. R. Co.* v. *Williams,* 114 Miss. 247: "These close questions of negligence *vel non* can only be determined safely and righteously by the juries of the country. A standard of conduct constituting negligence, or due care, in the numerous affairs of life, cannot be safely established from the bench; but such questions must be left to the logic and reasoning of the laymen who compose the juries, taken from all the walks of life, and who are familiar with ordinary human affairs and general conditions of everyday life."

Likewise appellee's second instruction correctly announces the law on contributory negligence. The jury could not have possibly been misled by the failure to state

in this particular instruction in what appellant's negligence must consist. All the law cannot ordinarily be stated in one instruction.

The jury had already been instructed by appellee's first instruction that appellant's negligence must be either in the construction of the mill or the failure to furnish a hook or other appliances. Appellee's first instruction, Record, Vol. 1, page 16, is as follows: "The court instructs the jury for the defendant that before the plaintiff can recover in this case he must establish to the satisfaction of the jury one of two things; either that that part of the mill where he worked was improperly constructed or that the defendant was under the duty to furnish him hooks, and unless he has established that either one of these two causes proximately contributed to his injury, or, if his injury was attributed solely to his own negligence, then it is the sworn duty of the jury to find for the defendant."

By this instruction the jury is told plainly and unmistakably that the only negligence chargeable to appellant is either that of improper construction or failure to furnish hooks. With these two instructions before the jury it is not possible that our instruction No. 2 misled the jury even if we should concede that ordinarily it should define the negligence of which appellant must be guilty.

SYKES, J., delivered the opinion of the court.

The appellee, Clayton Boatner, by next friend, sued the appellant for damages for personal injuries, and recovered judgment for one thousand dollars. From which judgment this appeal is prosecuted.

The negligence alleged in the declaration is: First, a defective construction of the sawmill, namely, that the carriage and carriage block passed over a part of the roller bed, leaving a space of about one-half inch in which the hand of the slab tripper might get caught between the carriage block and the roller bed; and, second, that the

master should have furnished appellee a hook or some kind of appliance with which to trip slabs.

The testimony of the appellee shows that his hand was caught and mashed between the saw carriage and the roller bed, also that he was not furnished with a hook or appliance with which to take the lumber from the carriage and place it upon the rollers.

There is no testimony in the record to show that the construction of the mill in this manner was improper or negligent. The testimony shows also that an experienced slab tripper could use a hook for this work, but that it would be more dangerous to other employees for an inexperienced man to use a hook. This appellee was not shown to be a man of such experience that he could properly use a hook. The testimony does not show that it was improper or negligent for the master to have instructed this employee to do this work with his bare hands.

It was incumbent upon the plaintiff to prove the negligence of the master in one or both of the instances as charged in the declaration. It is not a case where the *prima-facie* negligence statute is applicable. Neither does the doctrine of *res ipsa loquitur* apply.

The testimony merely shows the construction of the mill, but does not show an improper construction thereof; neither was there any negligence shown by failure to furnish this employee with a hook.

At the conclusion of the testimony the appellant (defendant in the circuit court) requested a peremptory instruction. This instruction should have been granted.

Reversed, and judgment here for appellant.

*Reversed.*